## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**Case No.: _____**
**CLASS REPRESENTATION**

GREGORIA SOBERAL-REYES and PAUL
REAS, on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC d/b/a
MR. COOPER,

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Gregoria Soberal-Reyes and Paul Reas, on behalf of themselves and all

others similarly situated, allege Nationstar Mortgage LLC, d/b/a Mr. Cooper ("Defendant")

violated the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA") and

the Fair Debt Collection Practices Act 15 U.S.C. 1692 *et seq.* ("FDCPA"). Plaintiffs, on

behalf of themselves and all others similarly situated, also claim damages due to

Defendant's constructive fraud.

## BRIEF INTRODUCTION

1.       In the last (10) years, over 960,000 Florida consumers faced foreclosure.

*See* **Exhibit. A** (UNITED STATES RESIDENTIAL FORECLOSURE CRISIS: TEN YEARS LATER,

*CoreLogic* (March 2017)). While it is true that foreclosure rates are lower today than in

2010-2011, thousands of consumers are still more than 90 days behind on their mortgage payments. *See id.*

2.      Consumers facing foreclosure are desperate to keep their homes. Defendant exploits their desperation by charging and collecting unreasonable, unfair, and deceptive property inspection fees, which consumers must pay or risk losing their homes.

3.      Defendant is a debt collector that services defaulted mortgage loans for Fannie Mae ("FNMA"). Plaintiffs and proposed class members have mortgage loans owned by FNMA that fell into default. After a homeowner defaults on his or her mortgage, Defendant's mortgage servicing system automatically orders property inspections of the home. A third-party property inspection vendor ("Inspection Vendor"), under contract with Defendant ("Inspection Vendor Contract"), performs the property inspections.

4.      Defendant orders property inspections every 20-30 days, and consumers must pay the illegal charges associated with these inspections to avoid foreclosure. Because of the tremendous volume of inspections, the Inspection Vendor charges Defendant approximately $7.00 per inspection, much less than the $15.00 Defendant charges and collects from consumers as profit.

5.      The property inspection charges are unfair, deceptive, and unreasonable because the actual cost for each property inspection is far less than the $15.00 charged and collected from defaulted borrowers. Defendant intentionally withholds and conceals the overcharge so that consumers will not dispute the charges. This scheme has resulted in a financial windfall for Defendant and creates an incentive to keep homeowners in

foreclosure. Indeed, the profit generated from thousands upon thousands of up-charged inspections has resulted in millions of dollars in illegal profit to Defendant.

6.      Defendant has violated the FCCPA and FDCPA, causing the Plaintiffs and putative class members actual, concrete, and particularized injuries. As a result, Defendant must be held accountable for causing the Plaintiffs and putative class members needless financial harm by knowingly charging and collecting illegitimate fees to which Defendant knows it is not entitled.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.

8.      The Court has supplemental jurisdiction over the state law claims under 28 U.S.C.  § 1367 because the basis of the FDCPA federal claim involves the same illegal collection practices that form the basis of the state claims.

9.      The Court has personal jurisdiction because Defendant does business throughout the United States, including Florida. Further, its repeated and systematic, voluntary contact with Plaintiffs and other Florida class members to charge debts in Florida made it foreseeable that Defendant would be hauled into a Florida court.[1]

10.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal

---

[1] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)

jurisdiction at the time the action is commenced and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

## PARTIES

11.     Mr. Reas is a natural person who lives in Florida.

12.     Ms. Soberal is a natural person who lives in Florida.

13.     Defendant is a foreign limited liability company with its principal place of business at 8950 Cypress Waters Blvd. Dallas, TX 75019.

## APPLICABLE LAW

14.     The Florida Supreme Court liberally construes public protection statutes in favor of the public.[2]

### I.     The Fair Debt Collection Practices Act

15.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

16.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

17.     The FDCPA also prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection

---

[2] *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

18.     Under Section 814 of the FDCPA, 15 U.S.C. § 1692l, a violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the Federal Trade Commission Act.

19.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

20.     Ms. Soberal is a "consumer" as defined by the FDCPA because she is a "natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

21.     The amount allegedly owed for Ms. Soberal's defaulted mortgage is a "debt" under the FDCPA because it is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes." *Id.* § 1692a(5).

22.     Defendant is a "debt collector" under the FDCPA because it is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). Here, Defendant's business involves the regular collection of thousands of debts from thousands of consumers via mail, internet and telephone. Moreover, Defendant regularly identifies itself as a "debt collector" in its communications with consumers.

23.     The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

## II.     The Florida Consumer Collection Practices Act

24.     The FCCPA prohibits persons from engaging in certain abusive practices in the collection of consumer debts. *See* FLA. STAT. § 559.72.

25.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing FLA. STAT. § 559.552).

26.     Specifically, the FCCPA mandates that "no person shall: claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." FLA. STAT. § 559.72(9). [3]

27.     The FCCPA creates a private right of action under FLA. STAT. § 559.77.

28.     Plaintiffs are "consumers" under the FCCPA because they are "natural person[s] obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

29.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## **FACTUAL ALLEGATIONS**

## I.     **The Standard Fannie Mae Mortgage**

---

[3] *Williams v. Streeps Music Co., Inc.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976) (stating that the statutory "language includes all allegedly unlawful attempts at collecting consumer claims").

30.     After default, the standard FNMA uniform mortgage ("Standard Mortgage") allows the lender to "do and pay for whatever is reasonable and appropriate" to protect FNMA's interest in the property. *E.g*., Mortgage ¶ 9. But the Standard Mortgage does not require the lender to take any action.

31.     The Standard Mortgage caps the amount a lender may charge for default-related services, like property inspection fees, to: (1) amounts "***disbursed***" in protecting Fannie Mae's interest and rights in the Mortgage Agreement (Paragraph 9 emphasis added); and (2) "expenses ***incurred*** in pursuing" certain default-related actions (Paragraph 22 emphasis added).

32.     The Standard Mortgage also incorporates "Applicable Law" and defines it as a term. "Applicable Law" is defined as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Mortgage ¶ (I).

33.     "Applicable Law" includes the Eleventh Circuit's opinion in *Prescott v. Seterus, Inc.*, 635 Fed.Appx. 640, 647 (11th Cir. 2015), which  reversed a district court's grant of summary judgment on FDCPA and FCCPA claims in the defendant's favor, holding that the defendant violated the FDCPA and FCCPA when it charged and collected from the plaintiff "estimated" attorney's fees that had not been incurred or disbursed in a reinstatement letter and where no agreement expressly obligated the plaintiff to pay such fees.  It also includes cases like *Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016), in which the court held that the plaintiff's allegations that the

defendant marked up property inspection fees and imposed them on mortgagors stated a claim for violation of the FDCPA and FCCPA, when the plaintiff alleged that the fees charged exceeded the costs actually incurred.

## II.      Seterus, Inc. and Its Relationship With Defendant

34.     Seterus, Inc. maintained a computerized mortgage servicing system that generated recurring property inspections, every 20-30 days, for defaulted loans.

35.     Seterus unilaterally contracted with an Inspection Vendor that performed property inspections on its behalf.

36.     Upon information and belief, the contract between Seterus and the Inspection Vendor listed and dictated the actual cost to Seterus for each property inspection.

37.     The contract dictates the actual cost for each property inspection.

38.     Upon information and belief, Seterus charged and collected $15.00 per inspection for every defaulted mortgage loan.

39.     Upon information and belief, Seterus's actual cost for each property inspection was significantly less than the $15.00 charged and collected from Plaintiffs and the putative class members,

40.     The $15.00 property inspection fees Seterus charged and collected are unfair, deceptive, and unreasonable because the entire amount was not *disbursed* to protect FNMA's interest in the property or rights in the mortgage. Nor was the entire $15.00 an expense *incurred* in pursuing the property inspection service.

41.     The property inspection fees are also unfair, deceptive, and unreasonable because Seterus hid the overcharge from consumers. Ostensibly, the fees reasonably appeared to be fees incurred for property inspections when such was not the case: The fees mask hidden profits paid to Defendant above and beyond any costs it incurred.

42.     Seterus knew that the Standard Mortgage did not allow Seterus to create a profit center at the expense of homeowners in default. Seterus also knew it could not charge and collect $15.00 per property inspection when that amount was not incurred or disbursed.

43.     Seterus ordered the property inspections not to protect FNMA's interest in the consumer's home but for a financial gain at the expense of homeowners.

44.     In 2019, Defendant purchased the servicing rights for FNMA mortgage loans from Seterus and retained Seterus's servicing management, its personnel, its assets, and its mortgage servicing platform.

45.     A *de facto* merger therefore occurred because Defendant absorbed Seterus who no longer existed.

46.     Defendant is therefore liable for its own torts and Seterus's torts.

47.     After the merger, Defendant became the servicer of the mortgage loans that Seterus previously serviced.

48.     Since then, Defendant has collected and tried to collect the illegitimate property inspection fees imposed by Seterus. In addition, Defendant has collected and tried to collect its own illegitimate property inspection fees.

### III.     Defendant Systematically Charges and Collects Unfair, Deceptive, and Unreasonable Property Inspections Fees

49.     Defendant maintains a computerized mortgage servicing system that generates recurring property inspections, every 20-30 days, for defaulted loans.

50.     Defendant has unilaterally contracted with an Inspection Vendor that performs the property inspections on Defendant's behalf.

51.     The Inspection Vendor Contract lists the actual cost to Defendant for each property inspection.

52.     Upon information and belief, Defendant's actual cost for each property inspection is significantly less than the $15.00 Defendant charges and collects from consumers.

53.     Upon information and belief, Defendant charges and collects $15.00 per inspection for every defaulted mortgage loan.

54.     The $15.00 property inspection fees are unfair, deceptive, and unreasonable because the entire amount is not *disbursed* to protect FNMA's interest in the property or rights in the mortgage. Nor is the entire $15.00 an expense *incurred* in pursuing the property inspection service.

55.     The property inspection fees are also unfair, deceptive, and unreasonable because Defendant hides the overcharge from consumers.

56.     Defendant knows that Standard Mortgage does not allow Defendant to create a profit center at the expense of homeowners in default. Defendant also knows it cannot charge and collect $15.00 per property inspection when that amount is not incurred or disbursed under the Inspection Vendor Contract.

57.     Defendant does not order and charge these property inspections to protect FNMA's interest in the consumer's home; rather, the property inspections are charged and collected for an unreasonable financial gain at the expense of homeowners.

### IV.     Ms. Soberal's Experience With Defendant

58.     Ms. Soberal and her now deceased husband bought a home at 2001 Ruby Red Blvd. Clermont, FL 34714 ("Property"), secured by a mortgage and note. *See* **Exhibit B**.

59.     Ms. Soberal's mortgage is the Standard FNMA Mortgage.

60.     FNMA owns her mortgage.

61.     In March 2018, Ms. Soberal's mortgage fell into default.

62.     While her mortgage was in default, Seterus ordered property inspections of her home every month and charged her $15.00 per property inspection.

63.     Upon information and belief, Seterus's actual cost for each property inspection was significantly less than the $15.00 charged.

64.     Under Ms. Soberal's mortgage, Defendant has no obligation to perform any default-related service on her home.

65.     Despite having no obligation, Defendant unilaterally ordered its own property inspections of her home every month and charged $15.00 for each property inspection.

66.     Along with the property inspection charges imposed by Seterus, Defendant has added its own charges to the total amount Ms. Soberal must pay to avoid foreclosure.

67.     On March 1, 2019, Seterus, Inc. transferred the servicing rights for Ms. Soberal's mortgage to Defendant.

68.     As such, Defendant became the servicer after Ms. Soberal's mortgage was already in default.

69.     After Defendant became the servicer of Ms. Soberal's mortgage, it has tried to collect the property inspections imposed by Seterus from Ms. Soberal.

70.     Defendant has demanded Ms. Soberal pay the property inspection fees in monthly mortgage statements and reinstatement letters ("Payment Correspondence").

71.     For example, on or about January 3, 2020, Choice Legal Group, on behalf of Defendant, sent a reinstatement letter to Ms. Soberal with the total amount she had to pay Defendant to avoid foreclosure. *See* **Exhibit C**.

72.     The    letter    further    stated    the    following    language:    "THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT." *Id.*

73.     The reinstatement letter demanded Ms. Soberal pay $36,542.43, which includes the illegitimate property inspection fees, or risk losing her home. *See id.*

74.     Defendant did not, in the Payment Correspondence or any other correspondence, inform Ms. Soberal that its actual cost for each property inspection was much less than $15.00.

75.     Defendant similarly did not inform Ms. Soberal that it was profiting from the monthly property inspections it was unilaterally ordering.

**V.     Mr. Reas's experience with Defendant**

76.     Mr. Reas owns a home at 7600 Village Green Dr. D, Winter Park, FL 32792. The home is secured by a mortgage and note. *See* **Exhibit D**.

77.     Mr. Reas's mortgage is a standard FNMA mortgage.

78.     FNMA owns his mortgage.

79.     Mr. Reas's mortgage fell into default in July 2017.

80.     While in default, Seterus ordered property inspections of his home every month and charged him $15.00 per property inspection.

81.     Upon information and belief, Seterus's actual cost for each property inspection was significantly less than the $15.00 charged.

82.     Mr. Reas desperately wanted to reinstate his mortgage and save his home. To do that, Seterus demanded and required that Mr. Reas pay the amount of $16,681.89.

83.     However, unbeknownst to Mr. Reas, that amount contained the illegitimate property inspection charges.

84.     In April 2018, Mr. Reas reinstated his mortgage after paying $16,681.89, which included the illegal property inspection fees.

85.     Upon reinstatement, according to his mortgage, the "Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."

86.     Seterus transferred the servicing rights to Mr. Reas's mortgage to Defendant who is the current servicer.

87.     After becoming the servicer, Defendant has tried to collect the $15.00 property inspections fee imposed by Seterus from Mr. Reas.

88.     Defendant has also tried to collect attorneys' fees from Mr. Reas after he reinstated his mortgage ("Post-Reinstatement fees"). *See* **Exhibit E**.

89.     Upon information and belief, the actual cost for the legal fees was much less than the amount Defendant has tried to collect.

90.     In the demand, Defendant demanded "PROPERTY INSPECTIONS … $100.00" and "LEGAL FEES … $1,762.30" as debts due and owing. *Id*.

91.     The Post-Reinstatement fees are unfair, deceptive, and unreasonable because they are not due and owing after Mr. Reas reinstated his mortgage.

92.     Further, the Post-Reinstatement fees are unfair, deceptive, and unreasonable because they include amounts not *disbursed* or *incurred* concerning the default-related services.

## VI.     Defendant Knows It Has No Legal Right to Charge and Collect Unfair, Deceptive, and Unreasonable Default-Related Fees.

93.     Defendant is charged with knowledge of the terms and conditions in the Plaintiffs and all other class members' mortgages.

94.     Defendant knew Seterus had not *disbursed* $15.00 for each property inspection fee nor *incurred* a $15.00 cost for each property inspection fee because, upon acquiring Seterus's servicing rights, Defendant received internal accounting information showing Seterus had not *disbursed* $15.00 for each property inspection fee nor *incurred* a $15.00 cost for each property inspection fee.

95.     Defendant also knew that it had neither *disbursed* $15.00 for each property inspection fee nor *incurred* a $15.00 cost for each property inspection fee.

96.     Nevertheless, Defendant knowingly charged and collected amounts from the Plaintiffs and other class members that included unfair, deceptive, and unreasonable property inspection fees.

97.     Defendant imposes these unreasonable and illegal property inspection fees and demands that homeowners pay them to prevent the loss of their home.

98.     Defendant's standard business practice is to charge and collect the illegitimate property inspection fees and Post-Reinstatement fees.

99.     Defendant has further knowledge of the illegality of its conduct as shown by the thousands of complaints received by the Consumer Financial Protection Bureau.

100.    Defendant also has knowledge that Seterus imposed illegitimate property inspection fees because Defendant received complaints from consumers about the fees.

## VII.   As a Direct Result of Defendant's Illegal Conduct, the Plaintiffs and Putative Class Members Have Suffered Concrete and Particularized Injuries

101.    Plaintiffs and the class have a statutory right to receive accurate information about the amounts owed under their mortgage loans.

102.    By charging and collecting unfair, deceptive, and unreasonable property inspection fees and Post-Reinstatement fees, which are prohibited by the uniform covenants in their mortgages, and failing to provide borrowers with accurate information about the amounts owed under their mortgage loans, Defendant has deprived the Plaintiffs and other class members of their right to receive accurate information under the FDCPA and FCCPA.

103.     Defendant has further placed the Plaintiffs and other class members at imminent risk of having to pay amounts not owed, and it has caused the amounts owed under their mortgages to be artificially inflated.

104.     Equally important, Defendant has caused Mr. Reas and the other potential class members financial harm by collecting the illegitimate fees to reinstate their mortgage loans.

105.     Plaintiffs, through counsel, sent letters offering Defendant an opportunity to cure its violations of state and federal law.

106.     After a reasonable amount of time, the Plaintiffs filed this lawsuit because Defendant did not cure the breach of its violations of state and federal law.

107.     As a result, all conditions precedent to the filing of this class action lawsuit have occurred or otherwise been waived.

## CLASS ACTION ALLEGATIONS

108.     Ms. Soberal brings this action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following nationwide FDCPA class of similarly situated persons subject to modification after discovery and case development:

> All consumers to whom Defendant charged, collected, or attempted to collect a fee for a property inspection during the applicable statute of limitations.

109.     Plaintiffs bring this action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Florida FCCPA Class ("FCCPA Class I") of similarly situated persons subject to modification after discovery and case development:

> All Florida consumers to whom Defendant charged, collected, or attempted to collect a fee for a property inspection during the applicable statute of limitations.

110.    Mr. Reas bring this action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Florida FCCPA Class ("FCCPA Class II") of similarly situated persons subject to modification after discovery and case development:

> All Florida consumers to whom Defendant charged, collected, or attempted to collect a fee for "Legal Services" or a similar type of default-related service after the consumer reinstated his or her mortgage, during the applicable statute of limitations.

111.    Excluded from the Classes is Defendant; any entities in which it has a controlling interest; its agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; Florida residents in bankruptcy; and those Florida residents who were charged a property inspection fee and filed a bankruptcy within the applicable statute of limitations.

112.    **Numerosity (Rule 23(a)(1).** The members of the Classes are capable of being described without managerial or administrative problems. The members of the Class are readily ascertainable from Defendant's records and payment databases.

113.    Plaintiffs do not know the exact size of each Class because this information is in the exclusive control of Defendant. Based upon the nature and scope of the conduct involved herein and publicly available information, there are likely thousands of class members. Accordingly, the Classes are so numerous that individual joinder of these persons is impracticable.

114.    **Commonality and Predominance (Rules 23(a)(2) and (b)(3).** Plaintiffs' and each Class member's claims raise predominant factual or legal questions that can be

answered for all Class members through a single class-wide proceeding. Questions of law or fact arising out of Defendant's conduct are common to all members of the Classes, and such common issues of law or fact predominate over any questions affecting only individual members of the Class. For example, to resolve the claims, it will be necessary to answer the following questions, each of which can be answered through common, generalized evidence:

    a.   Whether Defendant violated the FCCPA by charging monies not due.

    b.   Whether Defendant violated the FDCPA by charging monies not due.

    c.   Whether Defendant is liable for damages due to constructive fraud.

    d.   Whether Plaintiffs and class members are entitled to actual or statutory damages because of Defendant's actions.

    e.   Whether Plaintiffs and class members are entitled to attorney's fees and costs;  and

    f.   Whether Defendant should be enjoined from engaging in such conduct in the future.

115.    **Typicality (Rule 23(a)(3)).** Each Plaintiff is a Class member. Each one's claim is typical of the claims that would be asserted by other members of the Classes in that, in proving his or her claims, each Plaintiff will simultaneously prove the claims of all Class members.

116.    Moreover, each Plaintiff's claims are typical of those of all members of the Classes in that each Plaintiff and each Class member were mortgagors under a uniform mortgage instrument in default whom Defendant charged property inspection fees in

similar amounts that systematically exceeded the actual costs incurred or disbursed by Defendant for the inspections. As such each Plaintiff and all other members of the Class were similarly aggrieved and injured by the same deceptive or unfair conduct of Defendant in violation of the FDCPA and FCCPA, and Plaintiffs' claims are typical of the claims of the Classes.

117. **Adequacy (Rule 23(a)(4)).** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions, including FCCPA and FDCPA litigation.

118. **Superiority (Rule 23(b)(3)).** A class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted herein. The interest of Class members in individually controlling the prosecution of separate claims is small. The maximum damages for the violations alleged are minimal here. Management of these claims is likely to present significantly fewer difficulties than those presented in many larger class claims. Damages will be formulaic and based on set amounts available in Defendant's records. Plaintiffs are also unaware of any other Class members who are pursuing a similar case a Defendant

## COUNT I
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e *et seq.*

119. Ms. Soberal is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she incurred a financial obligation primarily for personal purposes that went into default

and is therefore a "debt" under 15 U.S.C. § 1692a(3), namely the amount allegedly owed for her mortgage.

120.    Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Ms. Soberal's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose — collecting debts.

121.    Defendant violated 15 U.S.C. § 1692e when it directly and indirectly used deceptive and misleading means and representations when collecting illegitimate property inspection fees from Ms. Soberal, including in the January 3, 2020 letter.

122.    Defendant violated 15 U.S.C. § 1692e(2)(A)-(B) because it falsely represented the character, amount, and legal status of the property inspection fees and the services rendered and the compensation it could lawfully collect from Ms. Soberal, including in the January 3, 2020 letter.

123.    Defendant also violated 15 U.S.C. § 1692e(5) because it directly and indirectly threatened to collect illegitimate property inspection fees, which had to be paid to avoid foreclosure, when it had no legal right to collect those fees. Defendant also used deceptive and misleading conduct when it directly and indirectly concealed the actual cost of each property inspection fee from Ms. Soberal, including in the January 3, 2020 letter.

124.    As a result of Defendant's violation of the FDCPA, Ms. Soberal and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**COUNT II**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT,**

**15 U.S.C. § 1692f** *et seq.*

125.    Ms. Soberal is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she incurred a financial obligation primarily for personal purposes that went into default and is therefore a "debt" under 15 U.S.C. § 1692a(3), namely the amount allegedly owed for her mortgage.

126.    Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its principal business purpose is the collection of debts, it was assigned Plaintiff's mortgage loan while it was in default, and it uses the United States mail for its principal business purpose: collecting debts.

127.    Defendant violated 15 U.S.C. § 1692f when it directly and indirectly used unfair and unconscionable means to collect illegitimate property inspection fees from Ms. Soberal, including in the January 3, 2020 letter.

128.    Defendant violated 15 U.S.C. § 1692f(1) when it directly and indirectly charged and collected property inspection fees not expressly authorized by Ms. Soberal's mortgage and the putative class members' mortgage agreements.

129.    As a result of Defendant's violation of 15 U.S.C. § 1692f, Ms. Soberal and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

**COUNT III**
**VIOLATION OF FLORIDA's CONSUMER**
**COLLECTION PRACTICES ACT, § 559.72(9), FLA. STAT.**

130.    Plaintiffs are "consumers" as defined by FLA. STAT. § 559.55(8) when they bought a home by mortgage.

131.    Defendant is a "person" as defined under the FCCPA.

132.    Defendant knowingly charged Plaintiffs and the putative class unfair, deceptive, and unreasonable property inspection fees and Post-Reinstatement fees.

133.    Upon information and belief, Defendant knew Seterus's actual cost for each property inspection was much less than $15.00.

134.    Upon information and belief, Defendant also knows its actual cost for each property inspection is much less than $15.00 as provided for by agreement.

135.    Defendant knew it could not charge or try to collect $15.00 for each property inspection because the Plaintiffs and putative class members' uniform mortgages prohibit the collection of fees not incurred or disbursed.

136.    Further, Defendant knew it could not collect default-related fees after a homeowner has reinstated their mortgage.

137.    Defendant was also put on notice about charging and collecting fees not owed after receiving the Eleventh Circuit opinion *Prescott v. Seterus, Inc.* and the thousands of complaints it receives from consumers complaining about default-related fees not owed.

138.    Despite knowing it had no right to collect these fees, Defendant has directly and indirectly charged and tried to collect the them from the Plaintiffs and all other class members.

139.    As a result of Defendant's violation of the FCCPA, Plaintiffs and the other class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

## COUNT IV
## CONSTRUCTIVE FRAUD

140.    After default, the Plaintiffs' mortgages did not require Defendant to perform any default-related service on their homes.

141.    Despite this non-obligation, Defendant on its own, and through Seterus, took on the extra contractual service of ordering and charging for property inspections.

142.    The Plaintiffs had no ability to negotiate who would perform the property inspections or the amount charged for each property inspection.

143.    Defendant on its own, and through Seterus, exercised exclusive control on who performed the property inspections and the amount charged for each property inspection.

144.    Upon information and belief, Seterus and Defendant unilaterally contracted with a third-party property inspection vendor to perform property inspections on the Plaintiffs' homes.

145.    Seterus and Defendant have charged $15.00 per property inspection.

146.    Upon information and belief, the actual cost to Seterus and Defendant for each property inspection was and is much less than the $15.00 charged and collected.

147.    As a result of the overcharge, Defendant has received a greater economic benefit than what was contemplated under the mortgage.

148.    Because of Defendant's constructive fraud, Plaintiffs are entitled to actual damages.

## JURY DEMAND

Plaintiffs are entitled to and respectfully demand a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests this Court to enter judgment against Defendant for all the following:

a. That Plaintiffs and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed.

b. That Plaintiffs and all class members be awarded statutory damages.

c. That Plaintiffs and all class members be awarded costs and attorney's fees.

d. That the Court enter a judgment permanently enjoining Defendant from charging and/or collecting debt in violation of the FCCPA and FDCPA.

e. That, should the Court permit the continued charging and/or collecting debt, it enter a judgment requiring the adoption of measures ensuring FDCPA and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that compliance with those measures.

g. That the Court enter a judgment awarding any other injunctive relief necessary to ensure compliance with the FDCPA and the FCCPA.

h. That the Court enter an order that Defendant its agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

j. That the Court certify Plaintiffs' claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

k. And such other and further relief as the Court may consider just and proper.

Dated: April 17, 2020

Respectfully Submitted,

CONSUMER LAW
ORGANIZATION, P.A.
*Counsel for Plaintiffs and the Putative Class*
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132

*s/Darren Newhart*
DARREN R. NEWHART, ESQ.
Florida Bar No.: 0115546
E-mail: darren@cloorg.com
J. DENNIS CARD JR., ESQ.
Florida Bar No.: 0487473
E-mail:DCard@Consumerlaworg.com

ZEBERSKY PAYNE
SHAW LEWENZ, LLP
*Counsel for Plaintiffs and the Putative Class*
110 Southeast 6th Street, STE 2150
Fort Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile:

*s/ Jordan Shaw*
JORDAN A. SHAW, ESQ.
Florida Bar No.: 111771
E-mail: jshaw@zpllp.com
MARK FISTOS, ESQ.
Florida Bar No.:
E-Mail: mfistos@zpllp.com
CANDACE PHILLIPS, ESQ.
Florida Bar No.:
E-Mail: cphillips@zpllp.com

METHVIN, TERRELL, YANCEY,
STEPHENS & MILLER, PC.
*Counsel for Plaintiff and the Putative Class*
2201 Arlington Ave. S.
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399

*s/Matt Stephens*
J. MATTHEW STEPHENS, ESQ.
Florida Bar NO.: 0688649
Email: mstephens@mtattorneys.com